Roger H. Hoole (5089)
**HOOLE & KING, L.C.**
4276 S. Highland Drive
Salt Lake City, UT 84124
Telephone: (801) 272-7556
Facsimile: (801) 272-7557
rogerh@hooleking.com

*Attorneys for Plaintiff*

---

### THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH

| | |
|---|---|
| Kathrine Nichols,<br><br>Plaintiff,<br><br>vs.<br><br>Paul Elden Kingston, Jason Ortell Kingston, Daniel Charles Kingston, Patricia Kingston, Davis County Cooperative, Davis County Cooperative Society, and Latter Day Church of Christ, dba, ZMPC9 and LDCC,<br><br>Defendants. | **AMENDED COMPLAINT AND JURY DEMAND**<br><br><br><br><br><br>Case No. 2:25-cv-00051<br><br>Magistrate Judge:<br><br>Judge: Dale A. Kimball |

Plaintiff complains and alleges against Defendants as follows:

### SUMMARY

This lawsuit seeks justice for Kathrine Nichols, a victim of a criminal organization that has operated for decades under the pretense of a religious community, but is, in reality, largely a racketeering enterprise, hate group, and corrupted polygamous cult called the "Order," the "Group," or the "Kingstons." Kathrine asks this Court to collectively hold accountable the above-named individuals and entity "Defendants" who, as part of the Order, trafficked her, as a child, into an underage, incestuous, and bigamous "Order Marriage."

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this civil action arises under the laws of the United States, including under the Federal Trafficking Victims Protection Reauthorization Act ("TVPRA"). This Court has supplemental jurisdiction over Kathrine's state law claims under 28 U.S.C. § 1367 because the state law claims arise from the same common nucleus of operative facts as Kathrine's federal claims.

2.      This Court has personal jurisdiction over each Defendant (i) because they purposefully availed themselves of the privilege of conducting various business, professional, and/or personal activities in Utah, including, *inter alia*, by residing in Utah, by owning, managing, and/or operating businesses in Utah, by doing business in Utah and/or by transacting business in Utah; and (ii) because the Defendants' contacts within this forum give rise to, or are related to, Kathrine's claims. Furthermore, Defendants' activities in Utah—including their ownership, management, and/or operation of businesses, their trafficking of minors—are substantial. Finally, with respect to the entity Defendants, each entity is incorporated in, and/or maintains a principal place of business, in this forum, and/or exists but is not incorporated in Utah, and is considered "at home" in Utah.

3.      Venue is proper in this United States District Court for the District of Utah pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Kathrine's claims occurred in the District of Utah.

## PARTIES

4.      Plaintiff Kathrine Nichols is a resident of Utah, a former Order member, a young woman and single mother.

5.      Defendant Paul Elden Kingston is a Utah resident, the Order's leader and its alter ego. He directs the activities of the Order, including the Davis County Cooperative ("DCC"), the Davis County Cooperative Society ("DCCS") and the Latter Day Church of Christ ("LDCC").

2

6.      Defendant Jason Ortell Kingston is a Utah resident and a member of the Order, including the DCC, DCCS, and the LDCC.  He and his plural wife, Martha Elaine Nichols Kingston, are Kathrine's biological parents.

7.      Daniel Charles Kingston is a Utah resident, a member of the Order, including the DCC, DCCS, and the LDCC, and the biological son of Paul Elden Kingston and Patricia Kingston.

8.      Defendant Patricia Kingston is a resident of Utah, a member of the Order, including the DCC, DCCS, and the LDCC, and a plural wife of Paul Elden Kingston.

9.      Paul Elden Kingston and Jason Ortell Kingston are full-blood biological brothers.

10.     Daniel Charles Kingston is Paul Elden Kingston and Patricia Kingston's biological son.

11.     Kathrine is Paul Elden Kingston and Patricia Kingston's biological granddaughter.

12.     Daniel Charles Kingston is Kathrine's biological uncle.

13.     Davis County Cooperative ("DCC") holds itself out as a "business" in multiple filings with the Tenth Circuit Court of Appeals in Case No. 19-4019.  It is integral to the enterprise operated and managed by Paul Elden Kingston through places of business in Utah.

14.     Davis County Cooperative Society ("DCCS") holds itself out as an "economic cooperative" on its website and as a "business" in multiple filings with the Tenth Circuit Court of Appeals in Case No. 19-4019.  It is integral to the enterprise operated and managed by Paul Elden Kingston through places of business in Utah.

15.     Latter Day Church of Christ ("LDCC") holds itself out as a "religion" registered as a nonprofit corporation with the State of Utah with a principal place of business at 1860 West Parkway Blvd, Salt Lake City, Utah 84119.  The LDCC has registered two names with the State of Utah under which it conducts business: ZMPC9 and LDCC.

16.     The individual and entity Defendants are part of, controlled by, and sometimes referred to herein collectively as the Order.

3

## INTRODUCTION

17.    Defendants, through their economic, educational, and brainwashing practices, taught Kathrine as a young girl that she had a responsibility to increase the membership, power, and wealth of the Order by entering into an Order Marriage, submitting sexually to her Order husband, and bearing numerous children so that the Order would have a consistent and steady supply of free child labor for its businesses and Defendants' benefits.

18.    Defendants used these practices to indoctrinate Kathrine and to coerce her so that when she was 16 years old, she would obey Paul Elden Kingston's command to enter into an unlawful Order Marriage to her uncle, Daniel Charles Kingston, as his third bigamous wife.  Kathrine is shown here with her Order husband Daniel Charles Kingston and his then two other "wives," being honored at a lavish and what she then truly believed to be a joyous wedding celebration hosted in an Order building known as the Ensign Learning Center located at 2755 Decker Lake Ln.



19.    At Daniel Charles Kingston's left is Jana Johnson who later sued him and the Order for being similarly trafficked for sexual purposes.

20.    Kathrine became pregnant at 16 and gave birth to Daniel Charles Kingston's child at 17.

21.    The Order hides illegal marriages, such as Kathrine's by falsifying marriage and birth certificates to make it difficult to identify men who father children in underage, plural, and/or incestuous marriages. Thus, the birth certificate of Kathrine's child omits Daniel Charles Kingston's name.

4

22.    By age 19, Kathrine knew she had to leave the Order to avoid being further abused and to prevent Defendants from using her child to swell the ranks of its workforce to line their pockets.

## GENERAL ALLEGATIONS

23.    In addition to being taught from the time she was a child to enter into an Order Marriage when she was young and to have as many children as possible, Kathrine was denied a public education, physically abused, taught to fear outsiders, and required to work for Order businesses.

24.    By coercing girls like Kathrine into underage marriages and pregnancies under these circumstances, the Order makes girls dependent on the Order which contributes to the extreme difficulty of leaving. Defendants did this to Kathrine to make it extremely difficult for her to leave.

25.    The LDCC is a fundamentalist religious organization, closely associated with the DCC and DCCS, which are businesses and part of a sophisticated economic cooperative and criminal enterprise, sometimes called the Order, that feeds off the trafficking and exploitation of children.

26.    Kathrine recognizes that people in the Order, including the family members and friends she loves, may feel locked into the Order and unable to leave, or may hold sincere beliefs and be offended by her legal action, but she is compelled to bring it, not to disparage beliefs, but to address illegal conduct, end the cycle of abuse for her child, and to try to help others.

27.    The Order and Defendants systematically indoctrinate Order members to believe that the laws of God, not society, govern. This indoctrination is employed to justify any action deemed necessary to advance the needs of the Order—regardless of illegality—causing contempt for the rule of law and illegal conduct.

28.    Kathrine's allegations are directed only at the Order and Defendants' unlawful actions and practices which injured her and are injuring other children. To the extent she references beliefs in this Complaint, she does so only when beliefs result in illegal actions and practices.

29.    Defendants' claim to power and authority over Order members is centralized and based on decades of beliefs and practices that originated in the Kingston family or "Kingston Clan" which traces it bloodline directly back to Jesus Christ.

30.    The Order is structured in a patriarchal and hierarchical manner with Paul Elden Kingston leading the enterprise. Senior men within the Order are assigned numbers—becoming "Numbered Men." The living Numbered Man with the lowest number is the leader of the Order. All Numbered Men in the Order with numbers lower than Paul Elden Kingston have died.

31.    To facilitate Paul Elden Kingston's power, control, and authority, Order members are taught and coerced to follow "The Law of One Above Another" and to submit to the authority and direction of the "One Above Them."

32.    The one directly above Kathrine was her father Jason Ortell Kingston (Numbered Man 49), until her Order Marriage, and then the one directly above her was her Order husband Daniel Charles Kingston, who, on information and belief, is not yet a Numbered Man.

33.    Paul Elden Kingston was the one above both Jason Ortell Kingston and Daniel Charles Kingston.  Ultimately the "one above" Kathrine was also Paul Elden Kingston.

34.    As set forth herein, The Law of One Above Another was used to make Kathrine and other children born into the Order become martyrs for their parents' beliefs, the Order, and Defendants.

35.    Young girls and boys in the Order are specifically taught to ensure they are "... fitting in with the ones over [them] and pleasing [the One Above them] in every way [they] know how."

36.    Order members as a whole are taught to "... [abide] by the order standards [and] make sure the ones around you are doing the same" by following the Law of One Above Another.

37.    The Order also utilizes a wide range of additional methods to control members—including the children who are involuntary members by birth into the Order—and to make them obedient and dependent on the Order, including, but not limited to:

a.  Requiring members to live in a closed, insular society;

b.  Teaching children to fear, distrust, and not associate with outsiders;

c.  Controlling the education and indoctrination of children;

d.  Teaching children to disobey the laws of society;

e.  Requiring most members to work for Order businesses;

f.  Arranging and directing all Order Marriages;

g.  Insisting that girls and women give birth to large numbers of children;

h.  False imprisonment or restraint to coerce compliance;

i.  Forced institutionalization to coerce compliance;

j.  Threatening girls and women with the loss of their children if they leave;

k.  Threatening the loss of family and friends for leaving; and

l.  Cutting off, shunning, and retaliating against those who leave.

38.    Once indoctrinated, controlled, and dependent on the Order, members are often compelled to submit to and perpetuate these practices on others to continue the cycle of abuse and to benefit the Order.  An example is Kathrine's family.  She was born to Martha Nichols and Jason Kingston on May 10, 2004. Her parents were married incestuously and bigamously when her mother was about 14 and her father was in his 20s.  Her mother had five children by the time she was 20.

39.    Kathrine's father is not listed on her birth certificate because not listing fathers on their children's birth certificates causes the State of Utah confusion and complicates criminal prosecutions of men fathering children in underage, plural or incestuous marriages, and for illicit tax and child labor reasons.  Thus, before Kathrine's mother was 20, she was essentially entrapped.

40.    This cycle has continued because failure to abide by The Law of One Above Another is a sin, punishable not only by God, but also by members of the Order, including Defendants.

41.    Punishments include physical and mental abuse, a rigorous repentance process that varies in extremes from members being physically restrained or held against their will, to being denied

7

basic human necessities, to as much as 42-day fasts, to physical beatings, to children being stalked and tracked, and to children being taken away from parents.

42.    On one occasion, a child was forced to wear trash bags as diapers for days while restrained in enclosed spaces as one example to other Order children of what could happen to them if they disobeyed or displeased the One Above them.



43.    Children have also been tied up or locked in rooms and basements, and occasionally restrained in garbage cans, as discipline for disobeying.

44.    More commonly, the Order relies on brainwashing and the threat of discipline and violence to compel children to obey as it systemically locks them into the Order through Order Marriages, having large numbers of children, isolation, group pressure, and financial dependency.

45.    Kathrine was tricked and compelled into her Order Marriage more by manipulation and brainwashing than by discipline and punishment, but she knew that she risked discipline and punishment for disobeying if she did not fulfill her primary role as a girl born into the Order.

46.    In addition to being compelled to obey, Kathrine was manipulated as a teenager to seek "marital direction" and obey the One Above by entering into an Order Marriage at 16.

47.    When girls experience teenage infatuation for a boy that the Order does not want them to marry, that infatuation, according to the Order, is a trick from Satan disguised as marital direction.

48.    To ensure that direction is received from God and not Satan, a girl's direction must be approved by the One Above, meaning a girl's impressions about who she may like or marry are from Satan, unless that direction is approved by Paul Elden Kingston in what is known as an Engagement Meeting.

49.    Kathrine was told who her "First Choice" should be, and Defendants manipulate her into thinking she had received the marital direction that they wanted her to receive.

8

50.     This "direction" is a ploy used to make girls think they are marrying their "First Choice."

51.     The concept of a girl's "direction" is also an intentional attempt to remove responsibility from those--in Kathrine's case, the Defendants--who coerce the girl into illegal Order Marriages.

52.     The Order gives girls a Dance Card and regularly holds Order dances. A girl's Dance Card lists the names of the boys and men with whom she can dance.

53.     When it comes time for a girl to be married, her Dance Card lists only those men that the Order has determined are her options for marriage.

54.     As a young girl, Kathrine had continually been groomed, coerced, and manipulated into an Order Marriage, but now the names of three men: Daniel Charles Kingston, Jason Kingston and Adam Kingston were put on her "Dance Card."

55.     The three men on Kathrine's Dance Card--Daniel Charles Kingston, Jason Kingston and Adam Kingston--were her only options for marriage and all three were her uncles by blood.

56.     Kathrine was required by Defendants to select one of her uncles as her First Choice, subject to final approval by Paul Elden Kingston.

57.     Kathrine opted for Daniel Charles Kingston, born on October 25, 2001, because he was the youngest of these three uncles.

58.     In addition to a patriarchal and numerical hierarchy, the Order operates with a belief in the "Pure Kingston Blood," which caused Defendants to direct Kathrine's Order Marriage within the Kingston bloodline to maintain Pure Kingston Blood in the blood of her children.

59.     The practice of incestuous Kingston unions results in birth defects. To reduce the number of babies born with birth defects, the Order requires all Order children to have their blood tested, cataloged, kept in a database, and used to flag sexual unions with the highest risk of birth defects.

60.     Kathrine's blood was tested for this purpose when she was about 10 years old at the Order's American Wellness and Rehab Clinic at 677 West 5300 South, Murray, Utah 84123.

61.    After Kathrine became pregnant with her first child in or about April 2021, she was subjected to a procedure at a hospital where a needle was used to draw fluid through her abdomen from the amniotic sack.  This amniotic testing indicated that pregnancy could continue.

62.    The next time Kathrine became pregnant in or about June 2022, she had a miscarriage.

63.    After Kathrine became pregnant the last time in or about October 2022, she was again subjected to amniotic testing at a hospital. This test showed a defective baby and resulted in a meeting with Paul Elden Kingston where he advised Kathrine that an abortion would be good and her best option if she got pregnant again soon and had more children.

64.    Kathrine obeyed The One Above and on or about January 12, 2023, her third pregnancy ended with an abortion.  She understood that she would have to become pregnant and tested again.

65.    Members of the Order who have the purist Kingston blood are favored over those from families whose blood is impure.

66.    For example, the Order teaches members that only those with Pure Kingston blood will survive the coming apocalypse.

67.    Men in the Order are favored and given authority and power to the extent they are obedient, pure of blood, have large families, and can produce a lot of workers, money, and value for the Order and Defendants, particularly when their children can have pure blood.

68.    Girls who will become Order wives like Kathrine and can bear children are of great value to the Order and Defendants, particularly when their children carry the Pure Kingston Blood.

69.    Favored men in the Order are often "gifted" additional wives to reward them and to exemplify the status of their favor and worthiness.

70.    In order to increase the number of Order children for more labor, wealth and power, The Law of One Above Another is essential for coercing arranged Order marriages and the production of as many children as possible, especially those with Pure Kingston Blood.

71.     Defendants used the Law of One Above Another to coerce Kathrine into providing them and the Order with great value through an Order Marriage to her uncle at age 16 and the birth of a child into the Order at age 17.

72.     At each stage of Kathrine's childhood, her education had focused heavily on indoctrinating her with obedience, subservience, and acquiescence to Defendants' will and the will of the Order through The Law of One above Another and the possible honor of being able to preserve the Pure Kingston Bloodline through her children.

73.     The Order did not educate Kathrine for the sake of expanding her mind and preparing her for a life of independence and self-determination. Instead, after she entered the Order's high school she was "married" and encouraged to graduate early, so she could work full-time for the Order and have children to benefit Defendants.

74.     Growing up in her parents' home Kathrine felt extremely controlled, pressured, and rule-bound. She was constantly taught the Order's various rules, requirements, and strictures in her various interactions with Defendants.  She had accepted the false belief that if she married, she would have more freedom within the Order.

75.     As a child, Kathrine had also attended numerous lavish Order weddings and had seen the honor and enhanced status bestowed on couples who had obediently entered into Order Marriages approved by Paul Elden Kingston.

76.     She was taught to idolize these marriage celebrations, desire such a marriage and celebration for herself, and to please those above her. She valued the prospect of her own marriage.

77.     Those marriages were even more extravagant and lavish if the couple was favored in the eyes of the Order, and these couples often received money, property or other promises valued by members of the Order for entering into their Order Marriages to have children. Kathrine was promised and received a car, a phone and a raise at work for entering into her Order Marriage.

11

78.     All of this was designed to make Kathrine's Order Marriage and the bearing of children with Pure Kingston Blood for Defendants her top and most desired priority and value.

79.     Accordingly, by about November of 2020 when Kathrine was 16 years old, Defendants had coerced her into being betrothed to Daniel Charles Kingston as her First Choice and a few months later she was scheduled to attend her Engagement Meeting with Paul Elden Kingston.

80.     In the Order, all engagements and Order Marriages must be approved by Paul Elden Kingston, where Paul Elden Kingston, also known as "The Man on the Watch Tower," typically announces his approval of the previously manipulated and directed union by declaring the girl and the man engaged and instructing them to hold hands in order to solidify the engagement and directing them to marry promptly.

81.     Once engaged, the couple have an Order Marriage and are pressured to have children.

82.     On or about February 10, 2021, at age 16, Kathrine attended her Engagement Meeting with Paul Elden Kingston and Patricia Kingston, their son Daniel Charles Kingston, and her parents, where Paul Elden Kingston approved her Order Marriage to Daniel Charles Kingston.



83.    Without the pressure placed on Kathrine as a child growing up in the Order and without Paul Elden Kingston's approval, she would never in a million years have entered into an Order Marriage with her uncle, Daniel Charles Kingston, as his third bigamous wife at age 16.

84.    Paul Elden Kingston approved the Order Marriage despite Kathrine's age, the incestuous nature of the "marriage," and the fact that his son, Daniel Charles Kingston, had two plural wives.

85.    That was the point: Kathrine was deliberately coerced by Defendants to enter into an illegal Order Marriage with Paul Elden Kingston and Patricia Kingston's son, Daniel Charles Kingston, because he was her fullblood uncle in order to maintain the Pure Kingston Bloodline.

86.    Women and girls in the Order represent value to the Order as wives for male Order members, sources of cheap (and often free) labor, and sources of additional labor by way of the children they bear.

87.    Kathrine was highly valuable to Defendants in this way because Defendants would receive significant value through her Order Marriage, subsequent sexual intercourse with her Order husband, and the birth of children because her children with Daniel Charles Kingston would carry on the Pure Kingston Bloodline.

88.    The children of Order women are likewise viewed as valuable property by the Order. These children are expected to work for Order businesses and any female children will also be expected to marry Order men and give birth to as many children as possible, thus continuing the cycle of producing additional free labor for the Order to exploit.

89.    Those children who will carry on the Pure Kingston Bloodline are considered even more valuable to the Order and Defendants.

90.    Kathrine had watched these transactions play out in numerous Order families, including her own, but did not start to fully recognize the damage being caused until after she left the Order.

91.    Because the Order needs girls to marry young and procreate early and frequently to increase the Order's work force, the Order devotes substantial time and resources to apply pressure and ensure that underage marriages to adult men, and resulting procreation, occurs.  Indeed, girls and woman in the Order are required to marry a man in the Order.  A woman would have to leave the Order to marry outside the Order.

92.    Kathrine's Engagement Meeting with Paul Elden Kingston on February 10, 2021, triggered three marriage ceremonies between her and Daniel Charles Kingston.

93.    The day after her Engagement Meeting, Defendants started trafficking Kathrine in and out of Utah for marriage ceremonies so that she would engage in commercial sex acts, as that phrase is defined under the TVPRA.

94.    First, on or about February 11, 2021, Kathrine was trafficked from Utah to New Mexico where an illegal ceremony was performed in the middle of a cold night on the side of a road in what she describes as "the middle of nowhere." Kathrine was told that because of the laws in Utah, she had to be taken to New Mexico for a secret Order Marriage.  Her father, Jason Ortell Kingston read the Order wedding vows from a piece of paper and unlawfully "married" the couple in New Mexico. This ceremony,  placing her in an Order Marriage with her adult uncle, Daniel Charles Kingston, was attended by Patricia Kingston and Kathrine's mother and captured with this photograph.

95.    Kathrine was then trafficked back to Utah, where her father met with her and repeated the Order's teaching that her role in life was now to submit herself to her Order husband in order to have children.

96.     In Utah, Defendants caused Kathrine and Daniel Charles Kingston to live in the same room at her mother's home in Sandy, Utah, where she was introduced to sexual intercourse by her Order husband.

97.     For her second "marriage," Kathrine was flown by Defendants with Daniel Charles Kingston, Patricia Kingston and Kathrine's parents to Rhode Island on or about March 16, 2021, where Daniel Charles Kingston signed a falsified State of Rhode Island Marriage Worksheet---on which he did not disclose his other bigamous Order Marriages to Jana Johnson and Andrea Andrews—in order to unlawfully obtain this Marriage License.



98.     Having fraudulently obtained a Rhode Island Marriage license, Defendants next caused Kathrine to be "married" to Daniel Charles Kingston a second time as shown in this photograph.



Kathrine had been induced to believe that she had to travel to Rhode Island for this second marriage ceremony so that her Order Marriage in New Mexico could be considered lawful.

99.    Kathrine's marriage in Rhode Island was illegal because it was an underage, an incestuous, and a bigamous marriage that was the product of a fraudulently obtained marriage license.

100.    After the faux ceremony in Rhode Island, Daniel Charles Kingston continued to have sex with Kathrine in Rhode Island before Defendants trafficked her back to Utah for a large, lavish, extravagant--and at the time, for Kathrine joyous--third marriage celebration held in honor of Kathrine and Daniel Charles Kingston on or about March 19,



2021, at the Order's new Ensign school building.  This celebration was presided over by Paul Elden Kinston and attended by numerous members of the Order.

101.    Kathrine's grooming, coercion, marriages, and trafficking for purposes of an engagement meeting and multiple wedding ceremonies took place at the direction of Paul Elden Kingston and was accomplished by him with the assistance of the other Defendants for the intended purpose of having Kathrine engage in commercial sex acts with Daniel Charles Kingston in Utah and Rhode Island to produce children, provide workers and grow the Order for the value of Defendants.

102.    On January 12, 2022, the Order and Defendants received additional value when a child fathered by Daniel Charles Kingston was born by Kathrine in the Order with Pure Kingston Blood.

103.    At times during their Order Marriage, Daniel Charles Kingston sexually abused and occasionally raped Kathrine.  One of these incidents resulted in a miscarriage and another resulted in an abortion before Kathrine found a way to flee.

104.    On December 20, 2023, Kathrine obtained an annulment from the illegal Rhode Island marriage in Utah under Utah Code Ann. §§ 30-1-4 (2) and 30-1-1(2).

105.    Her annulment was granted on December 20, 2023 by the Third Judicial District Court, Salt Lake County, State of Utah, Case No. 234901578.

106.    Kathrine was entitled to annulment of the illegal marriage pursuant to Utah Code Ann. § 30-1-17.1(1), which states: "A marriage may be annulled for any of the following causes existing at the time of the marriage: (1) When the marriage is prohibited or void under Title 30, Chapter 1, Marriage. . . ."

107.    Plural marriage is "forever prohibited" under Article III of Utah's Constitution, illegal pursuant to Utah Code Ann. § 76-7-101, and void under Utah law.

108.    Incestuous marriage is illegal pursuant to Utah Code Ann. § 76-7-102 and void under Utah Code Ann. § 30-1-1.

109.    Underage marriage is illegal pursuant to Utah Code Ann. § 76-7-102 and prohibited and void under Utah Code Ann. § 30-1-2.

110.    The age at which sexual intercourse can be consensual in the United States under the TVPRA is 18.

111.    In the annulment proceeding in Utah, Daniel Charles Kingston, through his Order attorney, argued that the Rhode Island marriage ceremony constituted a "legal marriage," and in doing so dubiously relied on an antiquated Rhode Island law that he claimed allows marriages of kindred members of certain ancient Jewish sects.

112.    What resulted in Rhode Island, however, was not a lawful marriage in that or in any other state; rather, it was the result of a fraudulently obtained marriage license, and a fraudulent marriage license used as a cover for an illegal, incestuous, bigamous, and underage "marriage."

113.    No one cognizant and compliant with the law would claim otherwise, unless they, like Defendants, deliberately intended to try to invoke a long outdated and virtually never cited Rhode Island law that may have once been used by an ancient Jewish sect, which does not apply to members of the Order who traffic girls in an attempt to conceal the Order's illegal sexual practices.

114.    Kathrine now realizes that the blood testing, grooming, dance card options, coercion, marriage ceremonies, sexual abuse, rapes, and amniotic testing she experienced took place for the intended purpose of impregnating her in an effort to lock her into the Order and to provide things of value to Defendants, including, for example, her Order Marriage, children with Pure Kingston Blood, her labor for Defendants and the Order, the labor of her children, Defendants' increased status and standing within the Order, and by growing the Order's population, control, and wealth.

115.    As intended by Defendants and the Order, it was extremely difficult for Kathrine to leave the Order as a 19-year-old single mother of a 2-year-old, but she eventually concluded that she had no choice.

116.    Daniel Charles Kingston bragged to Kathrine that he had been taught in a class for Order men about female ovulation cycles. Then raped her for that purpose.

117.    At that point, Kathrine started to stay away from her Order husband and made up her mind to secretly plan her transition away from the Order and Defendants to protect herself and her child.

118.    Kathrine's transition away from the Order with her child was gradual because she was dependent on the Order for housing, employment, and daycare.

119.    Kathrine also left the Order after realizing that her well-attended, lavish, and extravagant Order Marriage celebration-- like the numerous lavish and extravagant Order Marriage ceremonies that she and other Order Children had attended growing up--were designed to be idealized by little  girls and boys, like those whose faces are blurred in this picture, to entice them into their own Order Marriages, get the girls pregnant, and lock them into the Order—all while the girls are young and before they are old and mature enough to adequately make life changing decisions about marriage and children.

120.    Kathrine believes that this cycle of child exploitation needs to stop and that children in the Order need to be protected by the rule of law until they are adults.

**A CORE CONSPIRACY**

121.    For decades, the Order has operated core conspiracies as part of its ongoing unlawful activities and practices. As alleged in detail herein, one of these core conspiracies is the sex trafficking and abuse of Order children.

122.    At the center of this core conspiracy are certain Numbered Men and entities: Defendants Paul Elden Kingston, Jason Ortell Kingston, DCC, DCCS, and LDCC, and with respect to Kathrine, these Numbered Men and entities were assisted by Daniel Charles Kingston and Patricia Kingston in accomplishing this core conspiracy.

123.    Defendants, as the Order's core conspirators in this case, used methods such as "The Law of One Above Another," "The Pure Kingston Blood," and the teachings and practices of the DCC, DCCS, and LDCC in furtherance of this core conspiracy and its objectives.

124.    As part of this core conspiracy and its objectives, Defendants intentionally, knowingly, or recklessly, solicited, instructed, commanded, encouraged and/or actively took steps to arrange, place, and keep Kathrine in an unlawful Order Marriage and intentionally, knowingly, or recklessly, solicited, instructed, commanded, encouraged and/or intentionally aided or acted in committing sexual batteries, abuses, and rapes of Kathrine, including while she was a minor and an adult. Moreover, despite being aware of sexual batteries, abuses, and rapes, each Defendant as the result of and in furtherance of this conspiracy failed to stop or report the illegal activity to law enforcement or the Division of Child and Family Services.

125.    Defendants, as part of this core conspiracy and in the context of the Order's overall unlawful activities, patterns and practices, conspired and combined together for the purpose of causing and aiding each other to commit this core conspiracy, the objects of which were illegal and carried out as the result of calculated plans between Defendants.

126.    Defendants, as part of the Order, also acted in concert together through meetings of their minds, agreed objectives, approvals, and approved courses of action, including obedience to the will, command and teachings of their and the Order's core conspirators, all designed to accomplish and commit one or more unlawful and overt acts against Kathrine in furtherance of this core conspiracy as demonstrated by the facts alleged herein.

20

**FIRST CAUSE OF ACTION**
**SEX TRAFFICKING IN VIOLATION OF FEDERAL LAW**

127.    Plaintiff incorporates in this First Cause of Action the allegations contained in the other paragraphs of this Complaint and alleges, pursuant to the TVPRA, as follows against Defendants.

128.    Kathrine was trafficked for sexual purposes by Paul Elden Kingston, Jason Ortell Kingston, Daniel Charles Kingston, Patricia Kingston, the DCC, DCCS, and LDCC, who conspired to violate and/or benefit by violations of the TVPRA as alleged in detail herein.

129.    Defendants began grooming, sex trafficking, and abusing Kathrine when she was a minor.

130.    Defendants used and conspired to use methods of force, fraud or collusion, including among other things, the teachings and practices of "The Law of One Above Another," "The Pure Kingston Blood," as well as other teachings and practices of the DCC, DCCS, and LDCC that are designed to control and manipulate members of the Order, particularly children such as Kathrine.

131.    In addition to these coercive methods, Defendants promised Kathrine that she would receive pay raises at her Order job at the Order Bank for entering into an Order Marriage and for giving birth to each of her children.

132.    All of this was done to sexually traffic Kathrine starting at age 16 by controlling who she "married," controlling with whom she would have sexual relations, controlling when and where she would have sexual relations, directing that she have sexual relations to bear children, and directing that she continue to have sexual relations, and thus, bear children often making it increasingly difficult for her to leave the Order while enriching Defendants and the Order.

133.    By controlling and directing Kathrine and other girls in this manner, Defendants maximize the number of children produced in the Order to increase Order membership, obtain a steady supply of workers and a steady supply of female offspring to continue the Order's unlawful patterns and practices—all to Defendants' benefit and value.

21

134.    Defendants facilitated, engaged in, encouraged, condoned, and supported numerous commercial sexual acts with Kathrine, as alleged above, producing at least three pregnancies.

135.    Defendants recruited, enticed, harbored, provided, obtained, and maintained Kathrine and caused her to engage in commercial sexual acts, including through physical force, with her Order husband.

136.    Defendants' conduct and actions in support of their sex trafficking endeavors, as well as the commercial sexual acts and attempts to commit commercial sexual acts occurred in and/or affected interstate commerce.

137.    Defendants knowingly benefited financially and by receiving items and/or other things of value from participation in a venture that they knew or should have known would involve a violation of the TVPRA, including by engaging in the sex trafficking of Kathrine.

138.    Defendants each directly benefited from the value they extracted from Kathrine by trafficking her into an Order Marriage, keeping her in the Order, and maximizing the value they and the Order could extract from her.

139.    Kathrine also received value from being trafficked into an Order Marriage for sexual purposes because at the time she was trafficked for sex she believed that entering into an Order Marriage with Daniel Charles Kingston and maintaining the Pure Kingston Blood was a great honor for which she would be celebrated at her wedding ceremony causing her social standing in the Order to increase and to benefit her financially. She was promised and received pay raises at her Order job at the Order Bank for entering her Order Marriage and for giving birth to her child.

140.    Kathrine also received value from being trafficked into an Order Marriage for sexual purposes to the extent that the illicit sexual relations resulted in the birth of her child whom she loves.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
## SEX TRAFFICKING IN VIOLATION OF UTAH LAW

141.    Plaintiff incorporates in this Second Cause of Action the allegations contained in the other paragraphs of this Complaint and alleges, pursuant to Utah's human sex trafficking laws, as follows against Defendants.

142.    Kathrine was trafficked for sexual purposes by Paul Elden Kingston, Jason Ortell Kingston, Daniel Charles Kingston, Patricia Kingston, the DCC, DCCS, and LDCC, who conspired to violate and benefit by violations of Utah's human sex trafficking laws.

143.    Defendants individually used and conspired to use, among other things, the Order's "One Above Another" structure to sexually traffic Kathrine by controlling who she would marry, controlling when she would begin having sexual relations with her Order husband, directing that she get pregnant at 16 when it is difficult to leave the Order, and directing that she get pregnant often making it increasingly difficult to leave the Order.

144.    By controlling and directing Kathrine and other girls in this manner, Defendants maximize the number of children produced in the Order to increase Order membership, obtain a steady supply of workers and a steady supply of female offspring to continue the Order's unlawful patterns and practices.

145.    Defendants began the grooming, sex trafficking, and abuse of Kathrine when she was a minor and used various means of force, fraud and coercion as alleged above all in violation of Utah law.

146.    Defendants facilitated, engaged in, encouraged, condoned, and supported numerous sexual acts with Kathrine as detailed above, producing at least three pregnancies.

147.    Defendants also recruited, enticed, harbored, provided, obtained, and maintained Kathrine knowing that she was under the age of 18 and caused her to engage in sexual acts, including through physical force, with her Order husband.

148.    Defendants knowingly benefited financially and by receiving items and/or other things of value from participation in a venture that they knew or should have known would involve violations of Utah Code Ann. § 76-5-308.1 (human trafficking for sexual exploitation), Utah Code Ann. § 76-5-308.5 (human trafficking of a child for sexual exploitation); Utah Code Ann. § 76-5-310 (aggravated human trafficking); and/or Utah Code Ann. § 76-5-309 (benefitting from human trafficking) by engaging in the sex trafficking of Kathrine.

149.    Defendants each directly benefited from the value they extracted from Kathrine by trafficking her into an Order Marriage to keep her in the Order and maximize the value they could extract from her.

150.    Kathrine also received value from being trafficked into an Order Marriage for sexual purposes because at the time she was trafficked for sex she believed that entering into an Order Marriage with Daniel Charles Kingston and maintaining the Pure Kingston Blood was a great honor for which she would be celebrated at her wedding ceremony causing her social standing in the Order to increase and benefiting her financially within the Order.

151.    Kathrine also received value from being trafficked into an Order Marriage for sexual purposes to the extent that the illicit sexual relations resulted in the birth of her child whom she loves.

WHEREFORE, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION
## SEXUAL BATTERY AND ABUSE OF A CHILD

152.    Plaintiff incorporates in this Third Cause of Action the allegations contained in the other paragraphs of this Complaint and alleges as follows against Daniel Charles Kingston.

153.    Kathrine was sexually abused as a child as the result of and in furtherance of a conspiracy engaged in by Paul Elden Kingston, Jason Ortell Kingston, Daniel Charles Kingston, and Patricia Kingston. For purposes of this Third Cause of Action, Daniel Charles Kingston was a perpetrator pursuant to Utah Code Ann. § 78B-2-308 and Utah Code Ann. § 76-2-202.

154.    Defendants' conspiracy, which included, among other things, use of the "The Law of One Above Another," "The Pure Kingston Blood," and other coercive and controlling teachings and practices of Defendants, as alleged in detail in this Complaint, focused on subjecting Kathrine to unwanted sexual intercourse/rape with her Order husband for the purposes of getting her pregnant as a minor to make it difficult for her to leave the Order, to cause her to produce children as workers for Defendants and the Order, to continue obtaining her labor and services, and to reinforce the Order's culture of obedience and subservience for women.

155.    Daniel Charles Kingston's personal sexual abuse of Kathrine was for his own personal sexual gratification.

156.    The sexual battery, abuse, and rape of Kathrine was perpetrated in furtherance of the conspiracy and by Daniel Charles Kingston for his own sexual gratification.

157.    Defendants' misconduct was either violent and accomplished through physical force or accomplished as perpetrators under Utah Code Ann. § 78B-2-308 and § 76-2-202.

158.    Defendants, acting with intent, caused sexual contact with Kathrine that was harmful and offensive, and caused her to suffer injuries.

WHEREFORE, Plaintiff prays for relief as set forth below.

25

## FOURTH CAUSE OF ACTION
## SEXUAL BATTERY AND RAPE OF AN ADULT

159.    Plaintiff incorporates in this Fourth Cause of Action the allegations contained in the other paragraphs of this Complaint and alleges as follows against Daniel Charles Kingston.

160.    Kathrine was sexually battered and raped as the result of and in furtherance of a conspiracy engaged in by Paul Elden Kingston, Jason Ortell Kingston, Daniel Charles Kingston, and Patricia Kingston.

161.    Defendants' conspiracy, which included, among other things, use of "The Law of One Above Another," "The Pure Kingston Blood," and other coercive and controlling structures, teachings and practices, as alleged in detail in this Complaint, focused on subjecting Kathrine to unwanted sexual contact and intercourse with her Order husband for the purposes of getting and keeping her pregnant to make it difficult for her to leave the Order, to cause her to produce children as workers for the Order, to continue obtaining her labor and services, and to reinforce the Order's culture of obedience and subservience for women.

162.    Daniel Charles Kingston acted both for his own personal sexual gratification and, as the result of, and in furtherance of the conspiracy as alleged in detail in this Complaint.

163.    The sexual batteries and rapes of Kathrine were caused by Daniel Charles Kingston's violence and were accomplished through physical force as alleged in detail in this Complaint and in furtherance of the conspiracy.

164.    Defendants, acting with intent, caused the sexual batteries and rapes of Kathrine as an adult which was harmful and offensive, and caused her to suffer injuries.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FIFTH CAUSE OF ACTION
## NEGLIGENT SEXUAL BATTERY AND ABUSE OF A CHILD

165.    Plaintiff incorporates in this Fifth Cause of Action the allegations contained in the other paragraphs of this Complaint and alleges as follows against Defendants.

166.    Kathrine was sexually battered and raped as the result of and in furtherance of the negligence of Paul Elden Kingston, Jason Ortell Kingston, Daniel Charles Kingston, and Patricia Kingston.

167.    Defendants' negligence subjected Kathrine to unwanted sexual contact and intercourse with her Order husband which, in turn, kept her pregnant and made it difficult for her to leave the Order, caused her to produce a child as a worker for the Order, caused her to continue providing labor and services, and reinforced the Order's culture of obedience and subservience for women.

168.    Kathrine was sexually battered and raped by Daniel Charles Kingston for his own personal sexual gratification and as a result of his negligence and the negligence of Paul Elden Kingston, Jason Ortell Kingston and Patricia Kingston.

169.    Defendants negligently promoted, facilitated, and caused Kathrine's unlawful marriage, her resulting sexual intercourse with Daniel Charles Kinston, and her pregnancies.

170.    Defendants knew or should have known that their acts and omissions would, in fact, promote the unlawful marriage and resulting sexual contacts and pregnancy of Kathrine.

171.    Through their conduct, Defendants had and assumed duties not to negligently cause or further the sexual abuses and rapes of Katherine.

172.    Defendants breached their duties to Kathrine causing sexual abuse and rapes that were harmful and offensive to her, causing her to suffer injuries.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SIXTH CAUSE OF ACTION
## INFLICTION OF EMOTIONAL DISTRESS

173.    Plaintiff incorporates in this Sixth Cause of Action the allegations contained in the other paragraphs of this Complaint and alleges as follows against Defendants.

174.    The conduct of Paul Elden Kingston, Jason Ortell Kingston, Daniel Charles Kingston, and Patricia Kingston, individually and/or through a conspiracy directed at Kathrine was outrageous and intolerable in that it offended society's generally accepted standards of decency and morality.

175.    In addition, the conduct of Paul Elden Kingston, Jason Ortell Kingston, Daniel Charles Kingston, and Patricia Kingston, directed at Kathrine was outrageous and intolerable in that it offended society's generally accepted standards of decency and morality.

176.    Defendants intentionally and negligently caused or acted in reckless disregard of the likelihood of causing Kathrine severe emotional distress.

177.    As a proximate result of Defendants' conduct, Kathrine suffered severe emotional distress.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SEVENTH CAUSE OF ACTION
## CIVIL CONSPIRACY

178.    Plaintiff incorporates in this Seventh Cause of Action the allegations contained in the other paragraphs of this Complaint and alleges as follows against Defendants.

179.    Defendants collectively comprise a combination of two or more persons.

180.    One or more Defendants committed overt acts directed against Kathrine in furtherance of the conspiracy.

181.    One or more Defendants advised, instigated, aided, encouraged or directed the wrongful acts of Defendants and are liable as if they had performed the overt acts themselves.

182.    As a proximate result of Defendants conduct, Kathrine suffered damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

## PUNITIVE DAMAGES

183.    Plaintiff incorporates herein each and every allegation contained in this Complaint and alleges as follows against Defendants.

184.    The conduct of Defendants, as alleged herein, was willful and malicious or intentional conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of Kathrine.

185.    The wrongful acts alleged herein were committed or specifically authorized by Defendants and by Defendants as managerial agents of the DCC, DCCS, and LDCC.

WHEREFORE, Plaintiff prays for punitive damages as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a jury trial and pray for judgments against Defendants as follows:

a.    General damages in an amount to be proven at trial;

b.    Special damages in an amount to be proven at trial;

c.    Punitive damages in an amount to be awarded at trial;

d.    Attorney fees and costs, pursuant to 18 U.S.C. § 1595; and

e.    Attorney fees and costs, pursuant to Utah Code § 77-38-15(3).

Plaintiffs also seek costs, interest and such other and further relief as the Court deems just and reasonable.

DATED this 22nd day of January 2025.

**HOOLE & KING, L.C.**

*/s/ Roger H. Hoole*, Attorneys for Plaintiffs